IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : Case No:   3:24-cr-00015 |
| JORDAN PEREZ (a/k/a "J.P."), | : |
| | : |
| Defendant. | : |
| _____ | : |

MEMORANDUM IN REPONSE TO THE GOVERNMENT'S
MOTION TO REVOKE THE MAGISTRATE'S BOND ORDER.

Defendant Jordan Perez, through counsel, files this Response to the Government's Memorandum in Support of its Motion to Revoke the Magistrate's Bond Order. ECF 24.

BACKGROUND

Mr. Perez was charged by federal indictment in the Western District of Virginia on August 28, 2024. ECF 5. On September 5, 2024, he was arrested in the Western District of Texas and a detention hearing was held on September 11, 2024, before a magistrate judge in Texas. The magistrate judge in Texas found that there were conditions upon which he could guarantee Mr. Perez's appearance in Court and guarantee the safety of the community and granted him bond. The bond order was later stayed upon the government's motion.

On September 24, 2024, this Court indicated that it intends to hold a prompt hearing upon Mr. Perez's arrival in this district. ECF 18 (Court Order Granting Motion to Stay). On that same date, this Court issued an Order Appointing the

1

Federal Public Defender and undersigned counsel appeared on behalf of Mr. Perez. ECF 19, 23. On October 15, 2024, the government filed a memorandum in support of its Motion to Revoke the Pretrial Release Order. ECF 24.

## LEGAL STANDARD

The defense agrees with the government that the appropriate standard for review of the magistrate's order is *de novo*. *See* ECF 24 at 4 (Government's Redacted Memorandum in Support of Its Motion to Revoke); *see also United States v. Stewart*, 19 Fed. App'x 46, 48 (4th Cir. 2001). The defense also joins the government's statement of the 3142(g) factors, and the appropriate standards by which the government must meet its burden, which are: 1) preponderance of the evidence of risk of flight, and 2) clear and convincing evidence of dangerousness. *See Id*. at 5. Under the statute, the charges in this case do not create a "rebuttable presumption" in favor of detention. *See* 18 U.S.C. 3142(e)(3).

**I.  *De novo* review does not empower this Court to completely ignore the record.**

*De novo* review means that the reviewing court applies the same standard as the lower court and in applying that standard, is not restricted to the basis upon which the lower court made its ruling but may affirm on any legal and factual basis *fairly presented* in the lower court and *preserved for review*. *See PHP Healthcare Corp. v. EMSA Ltd. Partnership,* 14 F.3d 941, 945 (4th Cir. 1993); *see also United States v. Hopkins*, 268 F.3d 222, 224 (4th Cir. 2001). Therefore, while this Court may reverse or affirm on some basis other than that of the lower court, it cannot completely ignore the record altogether. The parties still must properly preserve the

2

issue before the lower court. Here, it is debatable whether the fulsome memorandum filed by the government in this district is at all consistent with the previous record.

To be clear, the government in this district could have alleviated this issue by forwarding a draft of its memorandum to its colleagues in the Western District of Texas who could have filed a verbatim motion with that Court. The government in this district could have also filed its memorandum in this district, which its colleagues in Texas could have then: a) offered to that court as an exhibit; or b) had forwarded directly to that court. It does not appear that either approach was taken. This Court should not allow the government to produce brand new arguments that were neither raised nor preserved before the magistrate court in Texas. *De novo* review is still a standard of review; it is not a second bite at the apple, particularly when the government has had an additional 30 days to prepare its position.

## II. The government has no specific right to proceed by proffer at a detention hearing.

The Bail Reform Act (the "Act") does not grant the government a specific right to proffer information at a detention hearing. Under the Act, that right is reserved for defendants. *See* 18 U.S.C. 3142(f) ("The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.")[1] Mr. Perez concedes that the Act has been construed by Courts to *permit* the government to proffer information at the Court's discretion. However, the Court also retains the

---

[1] "Person" refers to the defendant.

3

discretion—which it should exercise in this case—to require more than the government's proffer to prove that detention is warranted. *See United States v. Vane*, No. 24-4257, 2024 WL 4177963, at *6 (4th Cir. Sept. 13, 2024).[2]

### III. This Court should require the government to present witnesses who are subject to cross-examination and curtail its ability to proceed by proffer.

The government makes the following statement in its memorandum:

> The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing and the government may present evidence by a proffer.

ECF 24 at 5. The government then asserts that it is "prepared to proffer and introduce additional evidence in support detention at the forthcoming hearing." *Id*. The government relies on the *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986), in asserting that both parties may proceed by proffer and the defendant has no right to cross-examine persons not called to testify. *See ECF* 24 at 5.

While it is true that the government may proceed by way of proffer, it is important to clarify the reasoning behind the holding in *Winsor*, particularly as to

---

[2] *Vane* held the following:

> First, the government's ability to proceed by proffer doesn't change its ultimate burden of persuasion to show by clear and convincing evidence that the defendant is dangerous or by a preponderance of the evidence that he's a flight risk. And second, the judicial officer retains discretion to require more than the government's proffer to prove that detention is warranted. *See United States v. Edwards*, 430 A.2d 1321, 1334 (D.C. 1981) (en banc) ("If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony." (cleaned up)), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982).

*United States v. Vane*, No. 24-4257, 2024 WL 4177963, at *6 (4th Cir. Sept. 13, 2024).

4

the defendant's ability to cross-examine. The Court in *Winsor* held that the magistrate was not required to allow the defendant to cross-examine the investigators and police officers **because the defendant** never proffered that the government's information was incorrect. *See Id*. at 757. ("Without a proffer from [the defendant] that the government's proffered information was incorrect, the magistrate was not required to allow [the defendant] to cross-examine the investigators and police officers."). While the Act gives defendants the right to proffer, this is ineffectual where a defendant has received no factual discovery prior to the detention hearing. Defense counsel is forced to either: 1) proceed by proffer based solely on an interview of her client, without any proper vetting and thus the potential for proffered facts that are dubious or untrue[3]; or 2) as often happens, decline to proffer at all at the hearing, which then leaves the government's proffer unchallenged. By not proffering, counsel is faced with the inability to cross-examine the source of the government's information—which are its investigators and police officers.

This scenario does not make for a meaningful hearing, particularly where a magistrate judge in Texas has already heard arguments from both parties and ruled favorably for Mr. Perez. Much of the government's current argument hinges on the nature of the case and the weight of its evidence. These are factors that should be supported through evidence in the form of witnesses, not a one-sided proffer. In the

---

[3] This also gives rise to an ethical conundrum where defense counsels must weigh their duty to be honest and candid with the Court against their duty to advocate for the client.

5

interest of fairness, this Court should not allow the government to proceed by proffer, but instead require it to put on witnesses who are subject to cross-examination.

## ARGUMENT

Mr. Perez has been incarcerated in a local jail Texas for over a month *after* he was granted bond in that district, where he would live upon release. He is partially disabled, due to being shot in the head as part of the conduct alleged in this case. It is unclear when the U.S. Marshal's Service will transport him to the Western District of Virginia. Currently, there is an indefinite stay in this case, issued by this Court.

As a result, the government has had over a month to prepare its position for a bond appeal, whereas Mr. Perez has been in custody that entire time and counsel in this district has not yet received discovery.[4] It should be noted that the rationale behind the informality of detention hearings is the "need for speed" in resolving the issue of bond. *See Vane* at *6 ("The judicial officer holds a detention hearing when "neither the defense nor the prosecution is likely to have marshalled all its proof" and when the defendant may pose either a risk of danger or flight, giving the parties a "need for speed.""); *see also United States v. Martir,* 782 F.2d 1141, 1145 (2nd Cir. 1986) (" In light of the Act's mandate for informality and the need for speed at a point where neither the defense nor the prosecution is likely to have marshalled all its proof, the government as well as the defendant should usually be able to proceed by

---

[4] Undersigned counsel made a formal request for discovery on October 16, 2024, which is within the last few days. While it is arguable whether discovery should have been produced when an appearance was entered, undersigned is not asserting (at this time) that the government is delayed in producing discovery. However, in the interest of fairness, some production—even if limited—would likely yield a more meaningful hearing on the merits.

6

some type of proffer where risk of flight is at issue.") . This rationale is negated by the indefinite period that this case has remained stayed. Moreover, it has given the government—which already possesses all the discovery due to its investigation—an even more unfair advantage in preparing for this hearing.

I. **The magistrate judge in Texas was better positioned to rule on this issue, and his Order should be affirmed.**

This Court previously found that the government presented evidence that it was likely to succeed on the merits, that Mr. Perez was a danger to the community, and that he posed a flight risk. ECF 18 at 2. It should be noted that the magistrate judge in Texas granted bond after hearing arguments from both sides. It should also be noted that judges in the Western District of Texas are likely to have ruled on similar issues with much higher frequency than this Court and are thus better positioned to assess the weight of the evidence and the dangerousness of Mr. Perez. After all, if he were released, it would in *in the Western District of Texas*. It stands to reason that a judge in that district has a greater interest in, and understanding of, the level of dangerousness that Mr. Perez poses to the citizens *of that district.*

The bond report shows that Mr. Perez's criminal history consists almost entirely of misdemeanors. *See* Exhibit A (Pretrial Services Report). He was arrested on a misdemeanor firearm charge in January of this year, but there is no evidence that he was a prohibited person; in fact, that appears unlikely given his only felony conviction is a possession of marijuana for which received a year of probation and a $20 fine, and the actual charge is a misdemeanor. Therefore, the government's contention that it shows his dangerousness because he is carrying a gun is also

7

conclusory. Texas is among the most Second Amendment-friendly states in the entire country. It is not unusual for people to possess firearms in Texas. That alone does not suggest dangerousness. The government has not provided any other evidence about that charge other than he was arrested.

II. **The government's evidence to this point is conclusory and does not support a finding of dangerousness.**

The government's memorandum consists of mostly conclusory statements about evidence that only it has seen. It frequently uses terms such as "ransom", "hostage", and "kidnapped" without providing any actual evidence to back its conclusions. For example, the government includes a text exchange between a co-defendant and J.S., a significant other of the alleged victim. *See* ECF 24 at 6-7. The government alleges that the text exchange shows a threat of violent force. However, the only threat is that if J.S. does not produce payment, the alleged victim would be transported back to Mexico—which is the country in which she was a legal citizen. **In other words, she would be returned home.** That is not a threat of violence at all. When a person refuses to pay for a service, the provider will typically refuse to complete the service. That is a standard business practice, regardless of one's view of its legality.

III. **The magistrate judge in Texas—who released Mr. Perez on bond—was better positioned to assess his danger to the community than this Court.**

The only individuals to have suffered any violence are Mr. Perez—who was shot in the face—and the other individual who transported W.G., who was shot and killed by her significant other. The government appears to be relying on the

8

testimony of two individuals—alleged victims—who have great incentive for dishonesty. First, it is undisputed that they entered, and presumably remain, in the country illegally. Second, W.G.'s significant other committed a murder. It is typical for any defendant in a murder case to raise self-defense if there is *any fact* that might support it. It defies logic to believe that an individual who negotiated to have his girlfriend transported from Mexico for a $10,000 payment, failed to produce the agreed-upon price, and then murdered one of the deliverymen because an issue arose, would simply admit that to law enforcement. It stands to reason that the magistrate judge in Texas—who has undoubtedly seen many more of these cases than the judges in this district—viewed these facts with skepticism, particularly where the only person that suffered any violence was *the defendant*, Mr. Perez. This Court should be skeptical of those facts as well.

### IV. The government's memorandum overstates the severity of Mr. Perez's history.

Mr. Perez's criminal history—including any pending charges—were also presented to the magistrate judge in Texas. It consists of almost entirely misdemeanors, including the current pending charges. There is a single felony for which he received one year of probation and a $20 fine. Upon review of this history—which the Texas court no doubt had before it—that court found that he would not be a danger to that community. This Court should not reverse that order, particularly where Mr. Perez would reside in that district. The government suggests that Mr. Perez lied when he denied owning a firearm, because a firearm was found in a house where he was arrested. Again, this is conclusory. Mr. Perez was now the only person

9

in the house and there is no evidence that he even knew the gun was there. In fact, the pre-trial services report confirms that he lives with his mother in a home with no firearms, not at some alleged "human stash house."

**V.     There is no evidence that supports the argument that Mr. Perez is a flight risk.**

There is no evidence to support the contention that Mr. Perez is a flight risk. Ironically, the government's argument centers around the fact that *his parents* were born in Mexico—Mr. Perez is an American citizen born in Texas. His entire family resides in Texas, including his parents and four siblings. Many people who live in America have parents that were born in other countries. That does not suggest that they have strong ties to that country or any incentive to flee to that country. There is no evidence that Mr. Perez maintains a passport; again, the government makes conclusory statements on that point based on its "suspicions." Suspicion does not carry the day, evidence does. And the government's arguments are wholly lacking in evidence.

**VI.    The government's own arguments support the magistrate judge's decision.**

The government argues that if released, Mr. Perez would be allowed to "resume [his life] in the very same area where [he] worked for a TCO . . . [r]elease would provide [Mr. Perez] with access to a familiar criminal network and connections to flee." ECF 24 at 10. Yet, despite a clear interest in protecting the citizens of Austin, Texas, the magistrate judge in that district found that he was not a danger. Judge Howell certainly takes dangerousness seriously, as does any federal magistrate judge. He not only presides over cases in that district, but presumably lives there,

has longstanding ties there, and took an oath to uphold the Constitution there. Stands to reason that he is well-positioned to opine on whether a defendant is a danger to *his* community or a flight risk. This Court should not disturb his Order.

## CONCLUSION

While this Court reviews the motion *de novo*, it is not required to completely ignore the reasoning of the magistrate judge. This Court should affirm the magistrate judge's Order and grant Mr. Perez's pretrial release, with instructions to appear in this district as required.

Respectfully submitted,

s/ Donald R. Pender
Donald R. Pender, Esq.
V.A. Bar No.: 97455
N.C. Bar No.: 48004
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA 22902
Ph. (434) 220-3392
Fax (434) 220-3390
Don_Pender@fd.org

11

## CERTIFICATE OF SERVICE

  I hereby certify that on October 17, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

            s/ Donald R. Pender
            Donald R. Pender